IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| KRISTAN SAINT-PREUX, | * |
| Plaintiff, | * |
| v. | Civil Case No.: PWG-16-3276 |
|  | * |
| KIDDIES KOLLEGE CHRISTIAN CENTER, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

On September 28, 2016, Plaintiff Kristan Saint-Preux filed this action against Defendant Kiddies Kollege Christian Center, Inc. ("Kiddies Kollege") alleging that Kiddies Kollege failed to pay her overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to -431. Am. Compl. ¶ 1, ECF No. 6. In addition, the Amended Complaint alleges that Kiddies Kollege's failure to pay overtime compensation violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to -509. Am. Compl. ¶ 1. Plaintiff further alleges that Defendant unlawfully discriminated against her on the basis of her disability and failed to engage in the interactive process to accommodate the same in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101–12213, and retaliated against her for pursuing her rights under the federal and state statutes. Am. Comp. ¶¶ 1–2. On April 25, 2017, the Parties jointly moved for court approval of a settlement agreement that they have executed and filed along with a Memorandum in support of their

Motion. Jt. Mot., ECF No. 19; Jt. Mem., ECF No. 22. I find the net amount Saint-Preux is to receive to be fair and reasonable in light of the facts of this case.

## I. Background

Saint-Preux worked as a teacher's aide at Kiddies Kollege from roughly October 2014 until her termination on October 3, 2016. Am. Compl. ¶¶ 24, 33, 69. Plaintiff alleges that Kiddies Kollege paid her a normal hourly rate for hours worked in excess of 40 hours per week. *See id.* ¶ 38. From her hiring, through August 15, 2015, Saint-Preux was paid at a regular rate of nine dollars ($9.00) per hour. *Id.* ¶ 36. From August 16, 2015 to her termination, Saint-Preux was paid at a regular rate of ten dollars ($10.00) per hour. *Id.* ¶ 37. After Saint-Preux filed her Complaint on September 28, 2016, Defendant direct deposited $918.27 into Saint-Preux's bank account, and issued a pay statement for a gross payment for the same amount for 171 hours of unpaid overtime. Jt. Mot. ¶ 3.

The Settlement Agreement "releases Defendant . . . from all manner of actions . . . that arose out of . . . Plaintiff's employment and/or the Litigation prior to the date of this Agreement . . . ." and provides Saint-Preux with $918.27 in liquidated damages pursuant to the FLSA's penalty provisions. Agreement ¶¶ 1, 5, ECF No. 19-1. Although Kiddies Kollege denies Saint-Preux's discrimination and retaliation allegations, the proposed settlement also provides $4,081.73 for payment of attorneys' fees and costs associated with the non-FLSA claims. Jt. Mot. ¶ 10. Plaintiff is not seeking attorney's fees for Plaintiff's overtime claims in this settlement. Jt. Mot. ¶ 11.

## II. Discussion

### a. FLSA Settlement Generally

2

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354. *Lynn's Food Stores*, only requires "compromises of FLSA back wage or

liquidated damages claims" to be approved by the District Court in determining whether a settlement is fair and reasonable, the Court does not need to review parties' settlements of other FLSA claims that do not relate to back pay or liquidated damages. *See id.* at 1355; *Galvez v. Americlean Servs. Corp.*, No. 1:11CV1351 (JCC/TCB), 2012 WL 2522814, at *4 n.4 (E.D. Va. June 29, 2012) ("The Court need not engage in an in-depth review of the parties' settlement of [an FLSA] retaliation claim, provided its terms do not contaminate the settlement of claims relating to unpaid overtime and unpaid wages.").

  b. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The parties agree that a *bona fide* dispute exists as to whether Plaintiff is entitled to liquidated (i.e., double) damages under the FLSA in light of Defendant's assertion of good faith. Jt. Mem. 2. The FLSA permits Plaintiffs to seek liquidated damages for unpaid overtime wages. *See* 29 U.S.C. § 216(b). But courts have discretion to decline to award liquidated damages where an employer demonstrates that it committed an FLSA violation in good faith. *Randolph v. PowerComm Const., Inc.*, No. GJH-13-1696, 2014 WL 4981439, at *3 (D. Md. Oct. 1, 2014). Thus, a *bona fide* dispute exists as to whether Saint-Preux is entitled to any enhanced damages. Pl.'s Mem. 2.

  c. Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the

probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

First, after the Court issued a Scheduling Order in the case, Plaintiff requested all timesheets and timekeeping records from Defendant. "Upon review of the timekeeping records produced, Plaintiff's and Defendant's counsel agree[d] that Plaintiff is not owed more than the $918.27 payment made by Defendant," obviating the need for additional discovery. Pl.'s Mem. 2. Second, the parties negotiated the Settlement Agreement at an early stage in the litigation in order to avoid further costs associated with deposing witnesses and further attorney's fees. *Id.* at 3. With regard to the third factor, the parties state that they engaged in arms-length and good-faith negotiations through their respective counsel. *Id.* at 2–3. I accept these representations and am satisfied that no fraud or collusion contributed the parties' decision to settle the claims. *Id.* at 3–4. Additionally, the parties have established counsel's experience with FLSA cases. *Id.* at 4. As for the fifth factor, it is not relevant here, as it pertains to class actions. *See Lomascolo*, 2009 WL 3094955, at *10.

With regard to the sixth factor, the settlement provides for $918.27 in liquidated damages. Jt. Mem. 2. But, given Kiddies Kollege's assertion of "good faith," it is possible that the Court might exercise its discretion to decline to award liquidated damages if Saint-Preux pursued the litigation further. *Randolph*, 2014 WL 4981439, at *3. Thus, the compromise avoids the possibility that Saint-Preux might be unable to prove her entitlement to anything beyond the overtime wages that Kiddies Kollege has already paid her should she persist in litigating the case.

In addition, the Settlement Agreement contains a general release of claims beyond those specified in the Complaint. Agreement ¶ 3. A general release of this sort can render settlement agreements unreasonable. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011)); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). In this case, Saint-Preux is receiving 100% of her claim for unpaid overtime and an equal sum in liquidated damages, this percentage fairly compensates her for the release executed. Agreement ¶ 5; *see also Duprey*, F. Supp. 3d at 410 (general release did not render a settlement unfair when the plaintiff "was compensated for almost eighty percent of his back pay . . . plus an additional $2,250 in liquidated damages"). Accordingly, I find the settlement fair and reasonable.

d. Attorneys' Fees

The settlement discussions resulted in an agreement that Defendant would not pay attorney's fees associated with Plaintiff's FLSA claim, which Defendant would be liable for if Plaintiff successfully pursued her claim to a judgement. 29 U.S.C. § 216(b); Jt.Mem. 2–3. The Settlement Agreement allocates the remaining $4,081.73 of the settlement payment as Plaintiff's attorney's fees and costs related to her non-FLSA claims, which do not require Court approval.

Jt. Mem. 3.; *See Amaya v. Young & Chang, Inc.*, No. PWG-14-749, 2014 WL 3671569, at *3 (D. Md. July 22, 2014). Accordingly, the reasonableness inquiry is restricted to the settlement amount related to Plaintiff's FLSA claim, and no further inquiry is necessary into the adequacy of the agreed-upon fees.

### III. Conclusion

For the reasons explained above, the net amount proposed to resolve Saint-Preux's claims provides a fair and reasonable compromise as to the *bona fide* dispute of FLSA liability. The Joint Motion to Approve Settlement is granted, and all counts in the Amended Complaint are dismissed with prejudice.

### ORDER

Accordingly, it is this 20th day of June, 2017, hereby ORDERED that:

1. The Joint Motion to Approve Settlement, ECF No. 19, IS GRANTED;
2. Plaintiff's Amended Complaint, ECF No. 6, IS DISMISSED with prejudice;
3. The Clerk is DIRECTED to CLOSE THE CASE.

_____
Paul W. Grimm
United States District Judge

car